**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

---

In re:

Kidney and Hypertension Center, PLC d/b/a
Grand Forks Clinic,
The Medical Group, LLC,
North Dakota Dialysis, LLC,
Aurora Dialysis, LLC,
Kidney Institute of North Dakota, LLC,
KDJ Investment Group, LLC, and
KDJ Properties, LLC,

Debtors.[1]

**Joint Administration Pending**

Case No.: 26-30886
Case No.: 26-30888
Case No.: 26-30889
Case No.: 26-30890
Case No.: 26-30891
Case No.: 26-30892
Case No.: 26-30893

Chapter 11 Cases

---

**DECLARATION OF DR. KHALED RABADI**

---

I, Dr. Khaled Rabadi, declare as follows:

1. I am the sole owner of Debtors Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic ("Grand Forks Clinic"), The Medical Group, LLC ("Medical Group"), North Dakota Dialysis, LLC ("ND Dialysis"), KDJ Investment Group, LLC ("KDJ Investment"), and KDJ Properties, LLC ("KDJ Properties").

2. ND Dialysis in turn owns 99.999% of the equity interests in Debtors Aurora Dialysis, LLC ("Aurora Dialysis") and Kidney Institute of North Dakota, LLC ("Kidney Institute"

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' addresses and Employer Identification Numbers (EINs) are as follows: Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic (EIN #0821); The Medical Group, LLC (EIN #3765); North Dakota Dialysis, LLC (EIN #3768); Kidney Institute of North Dakota, LLC (EIN #6471); and KDJ Investment Group, LLC (EIN #2199), each located at 5750 S Washington Street, Grand Forks, ND 58201. Aurora Dialysis, LLC (EIN #8084) is located at 1451 44th Avenue South Suite 104D, Grand Forks, ND 58201 and KDJ Properties, LLC (EIN #1920) is located at 645 Beacon Circle, Grand Forks, ND 58201.

and, together with Grand Forks Clinic, Medical Group, ND Dialysis, KDJ Investment, and KDJ Properties, the "Debtors").

3. Based on my review of the Debtors' financial records and in consultation with the Debtors' professionals, I make this declaration in support of the Debtors' first day motions.

## I. HISTORY AND STRUCTURE OF THE DEBTORS.

4. I formed Grand Forks Clinic in 2002.

5. Since establishing my independent medical practice in Grand Forks in 2002, I have devoted my professional career to providing comprehensive, high-quality medical care to patients in Grand Forks and the surrounding region. In addition to maintaining an active clinical practice, I have been directly involved in the development, management, and daily operations of the Grand Forks Clinic and its related healthcare businesses, including oversight of clinical services, staffing, financial management, and the continued expansion of medical services.

6. Throughout the financial and operational challenges described in this Declaration, I have remained actively engaged in patient care and the management of these businesses, working closely with our dedicated advanced practice providers, management team, and staff to maintain continuity of care. I remain fully committed to continuing in these capacities throughout the Chapter 11 process and beyond, with the goal of preserving the Debtors, supporting our employees, and ensuring that our patients continue to have access to the comprehensive healthcare services they have come to rely upon.

7. Grand Forks Clinic is a multi-specialty clinic located in Grand Forks, North Dakota. Grand Forks Clinic offers on-site imaging, including CT, MRI, Mammo, X-Ray, DEXA, Ultrasound, and Echocardiogram, and also maintains an on-site lab. Grand Forks Clinic currently

operates from a building located at 5750 South Washington Street, Grand Forks, ND (the "Clinic Building").

8. In 2005, I formed the Medical Group, which currently operates from the same Clinic Building. The Medical Group is a specialty clinic offering hormone replacement therapy and weight loss treatments.

9. In 2005, I also formed ND Dialysis for the purposes of operating dialysis facilities at the Clinic Building.

10. In 2006, I formed Aurora Dialysis, which began operating a hemodialysis facility in 2008 at a separate location – 1451 44th Avenue South, Suite 104D, Grand Forks, ND. ND Dialysis owns 99.999% of the equity in Aurora Dialysis, with the remaining .001% of equity owned by the Kidney Institute.

11. I originally formed the Kidney Institute in 2003, and it now operates a peritoneal dialysis facility at the Clinic Building. ND Dialysis now owns 99.999% of the Kidney Institute, with the remaining .001% of equity owned by Aurora Dialysis.

12. In 2016, I formed KDJ Investment for the purpose of purchasing and constructing the Clinic Building. KDJ Investment continues to own the Clinic Building and serves as the landlord for Grand Forks Clinic, the Medical Group, ND Dialysis, and the Kidney Institute.

13. In 2016, I formed KDJ Properties for the purpose of owning my primary residence, which KDJ Properties continues to do today.

14. Collectively, the Debtors offer a comprehensive range of services, including primary care, internal medicine, gynecology and women's health, dermatology and aesthetics, nephrology and dialysis, hypertension management, walk-in clinic, imaging (MRI, CT scan,

mammography, ultrasound, echocardiogram, DEXA scan, and x-ray) and lab services, and weight loss and bioidentical hormone replacement therapy.

15. In February 2026, the Debtors expanded their operations by opening a clinic in Fargo, North Dakota, building upon their longstanding provision of nephrology services in the Fargo area.

16. The location currently employs three staff members supporting patient registration, insurance verification, prior authorizations, phlebotomy, and clinical services. The front desk and prior authorization staff also support operations at the Grand Forks location. Ultrasound services were introduced in August 2026, followed by phlebotomy services in September 2026, with laboratory specimens processed at the Clinic Building.

17. Dermatology and women's health providers are scheduled to begin offering services twice monthly in October 2026. The Fargo expansion utilizes existing clinical providers, ultrasound personnel, and laboratory infrastructure, thereby limiting additional staffing and operating expenses. This approach allows the Debtors to expand patient access and generate additional revenue opportunities without a proportionate increase in overhead.

## II. SUMMARY OF THE DEBTORS' FINANCIAL CONDITION.

### A. Prepetition Secured Lenders.

#### *i. First Western Bank & Trust.*

18. First Western Bank & Trust ("FWBT") loaned approximately $7,280,784.17 collectively to Grand Forks Clinic, KDJ Investment, and KDJ Properties under various loan documents (collectively, the "FWBT Loan Documents").

19. Pursuant to the FWBT Loan Documents, FWBT asserts a security interest in the following property owned by Grand Forks Clinic:

> All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligation relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the forgoing property.

20. Pursuant to the FWBT Loan Documents, FWBT recorded a mortgage in the Clinic Building owned by KDJ Investment.

21. Pursuant to the FWBT Loan Documents, FWBT recorded a mortgage in certain real property located in the residential building owned by KDJ Properties.

22. Pursuant to the FWBT Loan Documents, FWBT further asserts a purchase money security interest in a MAGNETOM ALTEA – MRI, MULTIX IMPACT – XRAY, MAMMOMAT REVELATION – MAMMOGRAPHY, and SOMATOM GO.ALL – CT SCAN and all accessories related to the equipment owned by Grand Forks Clinic.

23. Pursuant to the FWBT Loan Documents, FWBT further asserts a purchase money security interest in a DIM EXL 200 Domestic and ABACUS 5 ANALYZER owned by Grand Forks Clinic.

24. As of the Petition Date, the Debtors estimate that the outstanding amount of the Debtors' obligations to FWBT totaled approximately $7,242,289.

*ii. Merchant Cash Advance Lenders.*

25. The Debtors received loans from certain Merchant Cash Advance Lenders, Credibly and PIRS Capital (collectively, the "MCAs"). However, based on the public lien records, it does not appear that any of the MCAs hold a perfected security interest.

*iii. Equipment Lenders.*

26. North Mill Credit Trust ("North Mill") asserts a security interest in a SoftWaveGold 500 Li, Softwave System with 2 Applicators OP155 and other equipment owned by Grand Forks Clinic and covered by Agreement Number T-007615 C906622 dated December 30, 2024.

27. GE HFS, LLC ("GE") asserts a security interest in one GE Healthcare Prodigy Pro Full and all accessories and insurance related to the equipment owned by Grand Forks Clinic.

28. Lake Agassiz Certified Development Company/SBA (collectively, "Lake Agassiz") asserts a security interest in all fixtures, furnishings, building materials, supplies, equipment, and general intangibles owned by Grand Forks Clinic, including the following equipment:

a. Xray (Multix Impact YMAT);

b. MAMMO (Mammomat Revelation);

c. MRI (Magnetom Altea-System);

d. CT (Somatom go.All YMAT);

e. Electro Watchman Security System;

f. McKesson Leep System;

g. McKesson Colposcope; and

h. McKesson Optistar Injector.

29. MMP Capital, LLC, ISAOA ("MMP Capital") asserts a security interest in equipment by BTL Industries for aesthetics (EXION) and women's health (EMSELLA) and an ultrasound machine for the Fargo location.

30. De Lage Landen Financial Services, Inc. ("De Lage") asserts a security interest in a hematology analyzer.

31. While North Mill, GE, Lake Agassiz, MMP Capital, and De Lage (collectively, the "Equipment Lenders") all assert security interests in various assets of the Debtors, the Debtors do not believe any of the Equipment Lenders hold a security interest, or otherwise assert a security interest, in the Debtors' cash collateral, including in any cash, accounts, or accounts receivable.

32. In total, the Debtors owe the Prepetition Secured Lenders approximately $11,533,285.

**B. Unsecured Lenders.**

33. In addition to the Prepetition Secured Lenders, Grand Forks Clinic holds a line of credit with PNC Bank in the approximate amount of $93,000, and the Kidney Institute has a revolving loan with U.S. Bank.

34. Grand Forks Clinic and ND Dialysis collectively received 10 private loans totaling approximately $544,000.

35. The Debtors also owe certain real estate taxes, totaling $400,000, and payroll taxes, totaling $333,828.

36. Finally, the Debtors owe various vendors small amounts based on the timing of the filing of these cases. In total, the Debtors estimate that they owe approximately $2,131,676.71 to the various other vendors.

**C. Assets and Cash Projections.**

37. The Debtors' main assets are the Clinic Building, the residential building, and various medical equipment, which the Debtors do not believe would be sufficient alone to satisfy the claims of the Prepetition Secured Lenders, much less provide a recovery to the unsecured lenders.

38. Instead, the real asset of the Debtors remains the Debtors' ability to generate revenue through their continued operations.

39. The Debtors demonstrated substantial and sustained growth in patient visits over the past several years. Annual patient visits increased from 4,749 in 2018 to 27,871 in 2025, representing an increase of approximately 487%. Patient visits increased by approximately 15.4% in 2025 alone compared to 2024. This growth reflects the Debtors' established patient relationships, expansion of medical services, and continued demand for their healthcare services.

40. The Debtors have invested significantly in their medical facilities, diagnostic equipment, and clinical infrastructure to support this increased patient volume. Additionally, the opening of the Fargo clinic in February 2026 provides further opportunities to expand patient access and generate additional revenue. The Debtors believe that their established patient base, diversified medical services, and existing infrastructure provide a strong foundation for continued operations and successful reorganization.

41. For that reason, the Debtors intend to file a joint plan of reorganization for the purposes of maximizing the return for all creditors through continued operations.

**III. NECESSITY FOR COMMENCEMENT OF CHAPTER 11 CASES.**

42. Over the past several years, the Debtors have faced a series of significant financial and operational challenges despite continued investment in their facilities, expansion of medical services, and growth in patient visits.

43. In 2021, following the implementation and enforcement of federal COVID-19 vaccination requirements applicable to healthcare facilities, the Debtors experienced the departure of several employees. The Debtors received communications from the Centers for Medicare & Medicaid Services (CMS) and the Department of Health and Human Services regarding compliance with these requirements. The resulting staffing disruptions significantly affected operations, and it took approximately two years to rebuild staffing and restore operational stability.

44. In September 2021, at approximately the same time the Debtors opened their newly constructed medical facility in Grand Forks, Sanford Health opened a competing clinic in the community. The simultaneous opening of these facilities intensified competition in a relatively small healthcare market with limited population growth. This occurred as the Debtors had undertaken a substantial financial commitment to develop and equip one of the region's comprehensive multispecialty outpatient medical facilities, offering an extensive range of medical, diagnostic imaging, and laboratory services. Increased competition, combined with inflation, rising personnel expenses, and the financial obligations associated with the new facility, placed additional pressure on the Debtors' operations.

45. In 2024, the Change Healthcare cyberattack disrupted healthcare claims processing and reimbursement, resulting in delays in insurance payments and further straining the Debtors' cash flow. These difficulties were particularly significant because the Debtors had been operating for approximately three years without an available working capital line of credit, relying primarily on patient collections to fund their operations.

46. Despite efforts to obtain additional financial support and accommodations from their existing lender, FWBT, sufficient financing was not made available. Consequently, the Debtors resorted to alternative sources of financing, including merchant cash advances and loans from private lenders, to maintain operations, meet financial obligations, and continue providing patient care. The repayment obligations associated with these financing arrangements further strained the Debtors' liquidity.

47. The Debtors’ dialysis operations also experienced financial challenges, including declining patient census and associated revenue due in part to increased competition and changes in the regional dialysis market. Difficulties recruiting and retaining qualified dialysis personnel required the Debtors to utilize more expensive traveling healthcare professionals to ensure the safe and uninterrupted delivery of life-sustaining dialysis treatments. The Debtors have since successfully recruited local dialysis personnel, reducing their reliance on temporary staffing and associated expenses.

48. Despite these challenges, the Debtors remain a significant provider of healthcare services in Grand Forks and the surrounding region. The Grand Forks Clinic continues to offer a broad range of primary care, specialty medical services, advanced diagnostic imaging, and laboratory services, supported by a dedicated team of highly qualified and experienced healthcare professionals. Many of these employees have devoted substantial portions of their professional careers to caring for patients in the community. Their expertise, commitment, and longstanding patient relationships are among the Debtors’ most valuable assets and are essential to the continued delivery of quality healthcare.

49. The Debtors have continued to pursue operational improvements and efforts to resolve their financial difficulties outside of bankruptcy, including negotiations with FWBT. However, the parties were unable to reach a mutually acceptable restructuring agreement.

50. Due to the inability to reach a mutually acceptable agreement, FWBT ultimately commenced foreclosure and collection actions against the Debtors and myself individually:

a. *First Western Bank & Trust v. Rabadi et al.*, Case No. 18-2026-CV-00108, Grand Forks County (the "First Case"); and

b. *First Western Bank & Trust v. Rabadi*, Case No. 8-2026-CV-00864, Grand Forks County (the "Second Case").

51. On September 8, 2026, FWBT filed a motion for summary judgment in the First Case, and the Debtors responded to the motion on October 8, 2026. The motion remains pending.

52. On October 1, 2026, FWBT filed a motion for summary judgment in the Second Case. The motion remains pending.

53. In light of the Debtors' inability to negotiate a resolution with FWBT and the threat the litigation poses to the Debtors' ability to continue to negotiate and additionally due to the need to negotiate a deal with the other lenders, the Debtors made the difficult decision to commence these cases for the purpose of preserving their assets and ensuring their continued operations while the Debtors attempt to reorganize their businesses and propose a plan to repay their creditors.

54. The commencement of these Chapter 11 cases is therefore necessary to preserve the Debtors' healthcare operations, protect the employment and livelihoods of their dedicated staff, ensure continuity of patient care, and provide an orderly framework for restructuring financial obligations. The Debtors believe that their established patient base, comprehensive medical

Docusign Envelope ID: 403AB73F-93A1-8F1C-82D1-88BE48A9692A


services, experienced workforce, and existing clinical infrastructure provide a foundation for a successful reorganization.

55. I declare, under penalty of perjury, that the foregoing is true and correct according to my knowledge, information, and belief.

Dated: October 19, 2026

Signed: DocuSigned by: Khaled Rabadi 56D59FC25E1A448...

Dr. Khaled Rabadi